HELLRING LINDEMAN GOLDSTEIN & SIEGAL LLP
Attorneys for Plaintiff
One Gateway Center
Newark, New Jersey 07102-5323
973.621.9020
    Jonathan L. Goldstein, jlgoldstein@hlgslaw.com
    Matthew E. Moloshok, mmoloshok@hlgslaw.com

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES A. HORAN,<br><br>            Plaintiff,<br><br>vs.<br><br>COLLEGE POINT ASSOCIATES, LLC<br><br>            Defendant. | Civil Action No.<br><br><br><br>COMPLAINT |

Plaintiff, James A. Horan ("Horan"), by his undersigned counsel, complaining of the Defendant College Point Associates, LLC ("Landlord"), alleges as follows:

**PARTIES**

**Plaintiff**

1. Plaintiff Horan resides at 5 Colleen Court, Rockaway, New Jersey 07866 and is a citizen of the State of New Jersey.

**Defendant**

2. Defendant Landlord is a limited liability company, organized under the laws of the State of New York, having an address at 299 Duffy Avenue, Hicksville, New York 11801.

3. Upon information and belief, at this time, the sole member in Defendant Landlord is Lorraine Rose, who is a citizen and resident of the State of New York, residing at 95 Kimberly Lane, Southold, New York 11971.

4. The citizenship of a limited liability company is the citizenship of its members. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 586n.1 (2004).

5. Landlord is therefore a citizen of the State of New York.

## JURISDICTION

6. Pursuant to 28 U.S.C. § 1332(a)(1), this Court has original jurisdiction over the subject matter because all parties are citizens of diverse states -- plaintiff Horan being a citizen of New Jersey and defendant Landlord being a citizen of New York, as aforesaid.

7. The amount in controversy exceeds the sum of value of $75,000.00 exclusive of interest and costs.

## VENUE

8. Pursuant to 28 U.S.C. § 1392(b)(2), venue is proper in this district because a substantial part of the events upon which Horan's claim is based occurred in Rockaway, New Jersey, as more fully set forth below.

## PURPOSE OF THIS ACTION AND BACKGROUND FACTS

9. Horan brings this action to enforce Horan's right to purchase certain real property owned by Defendant Landlord in College Point, Queens, New York (hereinafter the "Property") pursuant to the purchase option in Paragraph 15 of that certain "Land, Asphalt Plant and Equipment Lease" made September 20, 2007 and effective as of January 7, 2008 between Defendant Landlord as landlord and Flushing Asphalt LLC as tenant (the "Lease").

10. A true copy of the Lease is annexed hereto as Exhibit A.

11. The Property:

A. Is located on the south side of 31st Avenue, between 122nd Street and the Flushing Bay, in the College Point section of the Borough and County of Queens, City and State of New York;

2

  B. Is identified on the tax maps of New York City as Queens Block 4377, Lot 27; Block 4378, Lot 1; and Block 4391, Lot 13;

  C. Consists of approximately 10.92 acres (475,675 square feet more or less); and

  D. Has an asphalt plant installed thereon.

12. Horan is expressly granted an option (the "Option") to acquire the Property from Landlord in Paragraph 15 of the Lease and as such is an express and intended third-party beneficiary of the Lease and the Option contained therein, with standing to enforce the Option.

13. Horan exercised his right to purchase the Property pursuant to the Option provided in Paragraph 15 of the Lease by letter dated January 14, 2016, initiating an appraisal process required to set the purchase price (a true copy annexed as Exhibit B), and perfected his exercise of the Option by a further letter dated December 19, 2016, offering to pay the Option purchase price determined by the appraisal process and the terms of Paragraph 15 of the Lease (a true copy annexed as Exhibit C) (collectively "the Option Exercise").

14. Despite Horan's exercise of the Option through the Option Exercise, Landlord has refused to proceed with a conveyance of the Property.

15. Landlord's refusal to proceed with the conveyance at the price determined by the appraisals and the terms of Paragraph 15 violates Horan's rights under the Lease and the Option.

16. Accordingly, Horan requests entry of an order compelling Landlord to convey the Property to him at the purchase price set forth in the Option Exercise in accordance with Paragraph 15 of the Lease.

## THE PROPERTY AND THE LEASE AND OPTION

17. At the time the Lease was executed, Horan had worked for more than thirty years in, for and in association with various businesses owned by Carl Lizza, Jr. ("Carl Lizza") and his family. Horan and Carl Lizza became close friends through those years of association. Both Horan and Carl Lizza and Carl Lizza's wife, Viane Lizza, lived in Rockaway, New Jersey.

18. Defendant Landlord was one of Carl Lizza's businesses, which was majority-owned, controlled and managed by Carl Lizza, until his death in 2011.

19. An asphalt plant has been operated at the Property for many years. From 1981 to 2008, an asphalt plant had been operated by entities majority-owned and controlled by Carl Lizza. Since 2008, the asphalt plant has been owned and operated by Flushing Asphalt, LLC, a company owned 50% by Horan, 25% by Carl Lizza's wife, Viane Lizza, and 25% by Carl Lizza's sister, Lorraine Rose. Pursuant to the Operating Agreement of Flushing Asphalt, Horan manages Flushing Asphalt in his capacity as its sole managing member.

20. As part of Carl Lizza's estate plan, in 2008, Carl Lizza caused all machinery, equipment and other personal property located at the Property to be sold to Flushing Asphalt, and concurrently leased the Property to Flushing Asphalt. Carl Lizza desired this arrangement because he understood that Horan was the only person in the Lizza organization who could competently run the asphalt plant and who could be trusted to generate future income for Carl Lizza's wife and sister.

21. In consideration of Horan's years of service for the Lizza organization, and as an inducement for Horan to continue to run the asphalt plant for the mutual benefit of Horan and Carl Lizza's family, which would generate continuing cash flow for Carl Lizza's wife and sister, Carl Lizza granted to Horan the Option to purchase the Property.

22.    Details of the Lease and Option were negotiated between Carl Lizza and Horan at their respective homes in Rockaway, New Jersey, as well as other locations in New Jersey. Carl Lizza then communicated the terms of the Lease and Option to his attorney, and directed him to serve as draftsman for the Lease and Option.

23.    On or about September 20, 2007, Landlord entered into the Lease, of which a true and complete copy is annexed hereto as Exhibit A.

24.    Pursuant to the Lease, Landlord leased the Property to Flushing Asphalt, LLC ("Tenant"), which is the tenant under the Lease, for a 20 year term commencing on January 1, 2008 and ending December 31, 2027.

25.    The Lease gives the Tenant, Flushing Asphalt, the right to renew the Lease for an additional 20 years, through December 31, 2047.

26.    Paragraph 15 of the Lease provides to Horan, individually, as a third party beneficiary of the Lease, the Option, which grants Horan the right to purchase the Property on the terms stated therein.

27.    Paragraph 15 of the Lease allowed Carl Lizza, acting on behalf of Landlord, for a limited period of time (expiring on the earlier to occur of the death of Carl Lizza, or at 5:00 p.m. on December 31, 2012) to sell or lease the Property to a third party. If Carl Lizza had sold or leased the Property to a third party as therein provided, the Landlord agreed to pay Horan specified consideration as recompense for the loss of the promised benefit of his option to purchase the Property. However, no such sale or leasing took place within that time period. Accordingly, Horan's Option under Paragraph 15 of the Lease remains in full force and effect.

28.    The Option in Paragraph 15 of the Lease, then provides as follows:

> In the event the Leased Property has not been sold by the end of the ninth year of said lease [i.e., the Lease] , **Horan and College Point agree to obtain an independent appraisal of said property** [i.e., the Property] which shall be completed prior to the end of the ninth year of the term of this lease. **Horan shall**

5

***have the option to purchase the Leased Property*** [i.e., the Property] ***free and clear of all liens, claims and encumbrances, for a sum equivalent to 80% of the appraised value after deducting the sum of $4,000,000 from said appraisal***.

(Emphasis added throughout.)

29. The Option further provides for what would happen if the parties were unable to agree upon an appraiser. If the parties could not agree, then "… each party shall, at [its] sole cost and expense … appoint an appraiser for the property; and, in the event that the two appraisers are then unable to agree upon a value, the ***value shall be determined by taking the average of both appraisals which sum shall be binding upon the parties***." *Id.,* subsection (i) (emphasis added).

30. By letter dated January 14, 2016 (Exhibit B hereto), Horan requested that the Landlord identify an independent appraiser in the expectation that the parties might be able to agree upon a mutually acceptable appraiser.

31. The parties were subsequently unable to agree on the appointment of a single appraiser.

32. Horan then engaged Norman Engelke, MAI, of Withers, Engelke & Associates, Inc., to prepare an appraisal of value.

33. Upon information and belief, Engelke had previously appraised the Property for Carl Lizza's Estate, incident to its filing of federal Estate tax returns and later in connection with determining the Estate's beneficiaries' interest in the Estate.

34. Engelke rendered an appraisal (the "Engelke Appraisal") which valued the Property as remaining subject to the Lease, and concluded the value of the Property to be the sum of $13,060,000.

35. Landlord's attorney engaged a different appraiser, Goodman-Marks Associates, Inc., which rendered an appraisal (the "Goodman Marks Appraisal"). The Goodman

Marks Appraisal determined two appraised values for the Property based on different assumptions: a value of $25,840,000 with the Lease taken into account; and a value of $37,100,000 based on an assumption that the Property was vacant and unencumbered by the Lease.

36. In proposing these values, the Goodman Marks Appraisal did not conclude that either was the more appropriate basis for valuation, or that either method was the method provided in the Lease. Rather, the Goodman Marks Appraisal noted that as appraisers hired by the Landlord's attorney they had "… been asked by our client to estimate the market value of the fee simple estate of the subject property, as if vacant land and without any lease encumbrances, as well as the value of the leased fee interest of the subject property based on the existing lease."[1]

37. Pursuant to Paragraph 15 of the Lease, Horan then tendered the Option Exercise to the Landlord on December 19, 2016 (Exhibit C hereto).

38. In the Option Exercise, Horan calculated the final purchase price at which the option would be exercised pursuant to Paragraph 15 of the Lease Option as follows:

    A. As there had been no final single agreed appraised value, Paragraph 15 required that the appraised values be averaged. Horan accordingly averaged the appraised values in the Goodman-Marks Appraisal and the Engelke Appraisal with the Lease considered: $25,840,000 + 13,060,000 = 38,900,000/ 2 = $19,450,000;

    B. Horan then took the express $4 million reduction provided by Paragraph 15 of the Lease, yielding an adjusted value of $15,450,000;

    C. Horan then multiplied the adjusted value by eighty percent, as required by Paragraph 15 of the Lease.

---

[1] Neither the Goodman-Marks Appraisal nor the Engelke Appraisal takes into account the potential negative impact of environmental conditions on the value of the Property. The Goodman-Marks Appraisal states that "[t]his appraisal assumes that the subject property is free and clear of any environmental contamination, and that no significant environmental conditions exist on the subject property".

This yielded a final option price of $12,360,000 ("the Option Price").

39. Landlord rejected the Engelke Appraisal obtained by Horan because it valued the property subject to the Lease.

40. As a matter of law, in valuing property applicable law requires that any use limitations or possessory rights under long-term leases be taken into account unless there is a clear provision in the parties' contract to the contrary. *See 936 Second Avenue L,P. v. Second Corporate Dev. Co., Inc.*, 10 N.Y.3d 628, 861 N.Y.S.2d 256, 891 N.E.2d 289 (2008). There is no provision in the Lease which states that the Property is to be valued without consideration of the Lease.

41. While Paragraph 15 requires the Landlord to convey the Property to Horan "free and clear" of any liens, claims or encumbrances, it does not state that the Property is to be valued without taking the Lease into account and, very significantly, the Landlord cannot in fact deliver the Property to Horan free and clear of the Lease because (unless there is a default by Tenant resulting in an early termination of the Lease) it will remain, and was intended to remain, in full force and effect until its expiration.

## COUNT I

### Compel Landlord to Convey the
### Property at the $12,360,000 Option Price

42. The appraisal mechanism in the Lease and Option was intended to and did result in a final and binding Option Price of $12,360,000 through the averaging of the appraisals.

43. Horan is entitled to purchase the Property at the $12,360,000 Option Price.

44. The "free and clear" Goodman Marks Appraisal plays no proper role in the determination of the Option Price because it is inconsistent with the terms of the Lease and is contrary to applicable law, which requires that all liens, claims and encumbrances affecting value must be considered in performing an appraisal of value. Hence, where, as here, a property remains

subject to an encumbrance which the Landlord cannot unilaterally remove, such property must be valued subject to the encumbrance.

45. The Landlord has asserted that the appraisal should be based on the value of the Property "free and clear" of encumbrances because the Option requires the Landlord to deliver the Property to Horan free and clear of encumbrances. While this argument is fundamentally flawed, it is crucial to take into account the fact that the Landlord is not able to convey the Property "free and clear" of all encumbrances because the Lease will remain in full force and effect at the time of and following a sale to Horan. Hence, the Property must be valued subject to the Lease.

WHEREFORE, plaintiff Horan demands judgment against defendant, Landlord, College Point Associates, LLC:

A. Establishing the Option Price in the amount of $12,360,000;

B. Directing Defendant Landlord, College Point Associates, LLC, to convey to Horan good and marketable title to the Property, free and clear of all encumbrances other than the Lease, upon Horan's payment of the Option Price of $12,360,000; and

C. Granting such additional relief as shall be just and proper.

## COUNT II

### In the Alternative, Declare the
### Rights and Obligations of the Parties

46. Alternatively, a genuine dispute exists between the parties as to the method of calculating the Option price payable pursuant to Paragraph 15 of the Lease and any setoffs thereto.

47. This Court may declare the rights and obligations of the parties pursuant to 28 U.S.C. § 2201.

WHEREFORE, Horan prays that the Court:

9

A. Determine the proper construction of the Option set forth in Paragraph 15 of the Lease, including the elements of the Option price, the appropriate basis of appraisal, setoffs (including all damages Horan may be entitled to from the inability of Landlord to deliver the Property free and clear of the Lease), and any other issues required to resolve the issues equitably among the parties;

B. Direct the parties to proceed in accordance with those determinations; and

C. Grant such additional relief as shall be just and equitable.

HELLRING LINDEMAN GOLDSTEIN & SIEGAL LLP
Attorneys for Plaintiff

By: /s/ Jonathan L. Goldstein
JONATHAN L. GOLDSTEIN
A Member of the Firm

Dated: February 6, 2017

## CERTIFICATION PURSUANT TO L.CIV.R. 11.2

The matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

I certify under penalty of perjury that the foregoing is true and correct. Executed on February 6, 2017.

 

                                         /s/ Jonathan L. Goldstein
                                          Jonathan L. Goldstein

141344